**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SJ Group LLC, | No. CV-21-00502-PHX-DJH |
| Appellant, | **ORDER** |
| v. | |
| Eric M Haley, | |
| Appellee. | |

This is a bankruptcy appeal arising from an Order and Judgment of Bankruptcy Judge Daniel Collins of the District of Arizona. Appellant SJ Group, LLC's ("SJ Group") filed an Opening Brief (Doc. 5).[1] Appellee Eric Haley ("Haley") filed an Opening Brief, as well, which the Court will construe as the response (Doc. 10). SJ Group has filed a Reply (Doc. 13). For the following reasons, the Court affirms the Order and Judgment of Judge Collins.

**I.  Background**

On June 20, 2019, Bankruptcy Judge Paul Sala conducted the auction of Debtor Regency Park Capital 2011, Inc.'s Super 8 Motel (the "Motel"). (Doc. 5-2 at 4–30). The dispute here concerns an Earnest Money Deposit of $250,000 (the "Deposit") that SJ Group placed in escrow in order to participate in the auction.

---

[1] SJ Group requested oral argument on this matter. The Court finds the issues have been fully briefed and oral argument will not aid the Court's decision. Therefore, the Court denies SJ Group's request. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

In addition to the Deposit, all the participating bidders executed a purchase and sale agreement ("PSA") that purported to govern the auction's terms. Under the PSA, a winning bidder could not recover the Deposit "under any circumstances." (Doc. 5-1 at 84). Although this language appears definitive, the PSA also provides that a winning bidder is able to terminate the agreement in the event the Motel incurred a casualty, such as a flood, before the sale closed. (*Id.* at 93). And in the event the agreement was terminated because of a flood, the PSA allowed the winner to retrieve its Deposit. (*Id.*)

Before the bidding started, counsel for one of the creditors asked Judge Sala whether the Deposit became non-refundable "if the winning bidder fails to close for any reason." (Doc. 5-2 at 11–12). Judge Sala then explained to all the bidders that the Deposit "goes hard and will be forfeited if you[, the winning bidder,] can't close." (*Id.* at 12). "You won't be able to rely on the fact that you couldn't get financing, you couldn't get your funds by the right day, you couldn't get the transfer of the franchise approved. So everyone needs to understand so you're all on the same plain." (*Id.*) Judge Sala then asked if there were any questions. (*Id.*) There were no further questions. No party objected. And the auction proceeded.

SJ Group submitted the highest bid of $6,150,000 and became the winning bidder. (*Id.* at 23). On June 25, 2019, Bankruptcy Judge Paul Sala entered an Order approving the sale (the "Sale Order"). (Doc. 5-1 at 64). The Sale Order states, in part, that "[t]he Winning Bidder's $250,000.00 deposit is non-refundable." (*Id.* at 66). Nowhere in the Sale Order did Judge Sala mention the PSA or circumstances under which the PSA might allow for a refund of the Deposit. No party has ever attempted to formally amend the Sale Order or file an appeal.

Then, on July 15, 2019, there was a flood. A shower broke, and the Motel flooded with water. SJ Group represents that after this flood, it attempted to renegotiate the sale of the Motel for a lower price. (Doc. 5 at 15).[2] But the negotiations failed. Instead of closing

---

[2] Haley represents that SJ Group actually first attempted to renegotiate the purchase price on July 9, 2019, before the showerhead broke. (Doc. 10 at 7) (stating that counsel for SJ Group told Haley on a July 12, 2019, conference call that SJ Group was "unable and unwilling to close at the full sale price but would be willing to close at an amount less than

- 2 -

the sale, SJ Group sought to terminate the PSA and retrieve its Deposit from Haley. Haley declined to return the Deposit.

In August 2019, the parties turned to the Bankruptcy Court and began litigating whether SJ Group was entitled to the return of its Deposit. (*Id.*) Judge Sala recused himself in December 2019, and the matter was reassigned to Judge Collins. (Doc. 5-1 at 153). SJ Group filed a Motion for Summary Judgment for Return of Earnest Money Deposit, in which it argued that it was entitled to the return of the Deposit under the PSA's terms. (*Id.* at 157–58). The parties stipulated to limit their arguments on this matter, and Judge Collins subsequently issued an Order Limiting Issues that limited discussion to "the issues raised in SJ Group's Motion for Summary Judgement." (Doc. 5-1 at 179).

On December 1, 2020, Judge Collins heard oral argument on the dispute, and he requested further briefing on whether the Sale Order conflicted with the PSA. (Doc. 5-2 at 39). On December 17, 2020, Judge Collins heard oral argument again to discuss the Sale Order's impact on this case. Ultimately, he found there was a flood as defined by the PSA, and he found that paragraph 15(b) of the PSA gave SJ Group a right to seek to terminate their agreement. (*Id.* at 52). However, Judge Collins did not find that SJ Group was entitled to the return of its Deposit.

SJ Group was not so entitled because Judge Collins found the Sale Order did not permit the winning bidder to retrieve its Deposit in the event of a casualty. (*Id.* at 53). Instead, the winning bidder's Deposit, he said quoting Judge Sala's warning, "goes hard." (*Id.*) Although this was not the result that the parties had agreed to under the PSA, Judge Collins found the Sale Order's terms controlled and overrode whatever was stated in the PSA. In Judge Collins' words, "I think that [Judge Sala's] language is clear and unambiguous, and I think it trumps what the parties have otherwise agreed to under the [PSA]." (*Id.* at 55). Ultimately, in his Final Judgement Regarding Disposition of Earnest Money Deposit, Judge Collins held that "SJ Group did not close its purchase of the [Motel]. Pursuant to the Sale Order, the Liquidating Agent is, and shall be, entitled to retain the

---

the full purchase price"). SJ Group's Reply does not refute or mention this representation.

1   $250,000 bid deposit placed into escrow by SJ Group." (Doc. 5-1 at 289).

2   On appeal, SJ Group raises two issues. The first is whether Judge Collins erred by finding, "*sua sponte*," that the Sale Order and PSA conflict and that the Sale Order overrides the PSA. (Doc. 5 at 6). The second is whether Judge Collins erred by finding that SJ Group is not entitled to the Deposit's return. (*Id.* at 7).

## II.     Legal Standard

The Court is called to evaluate Judge Collins' interpretation of Judge Sala's Order. In doing so, the parties dispute how much deference the Court should give Judge Collins. Usually, the interpretation of a court order is a legal question, which is subject to a *de novo* review. *In re RCS Cap. Dev., LLC*, 2013 WL 3619172, at *4 (B.A.P. 9th Cir. July 16, 2013) (citing *United States v. Spallone*, 399 F.3d 415, 423 (2d Cir. 2005)). Under a *de novo* review, no deference is given to the bankruptcy court's determinations. *In re Carey*, 446 B.R. 384, 389 (B.A.P. 9th Cir. 2011).

SJ Group argues a *de novo* review is appropriate here. Haley, however, argues the Court should afford "broad deference" to Judge Collins' interpretation because he and Judge Sala form part of the same Bankruptcy Court. (Doc. 10 at 13). It is true that some courts apply customary appellate deference to a bankruptcy court's interpretation of its own order. *In re Casse*, 198 F.3d 327, 333 (2d Cir. 1999). And yet, the same courts have clarified that such deference only applies when a judge is interpreting his or her own order. *See United States v. Spallone*, 399 F.3d 415, 423 (2d Cir. 2005) (holding that one judge's interpretation of another judge's order is reviewed under the *de novo* standard). Accordingly, the Court will conduct a *de novo* review.

## III.    Discussion

There is little doubt that SJ Group finds itself in a regrettable situation. Faced with the prospect of losing $250,000 despite the terms of the PSA, SJ Group makes the sensible argument that Judge Collins erred by finding Judge Sala imposed different terms on the sale than what the parties had agreed to. Even though SJ Group's argument is compelling, there are other prevailing considerations that convince the Court it must affirm Judge

Collins' final decision. To show why this is the necessary conclusion, the Court begins with what Judge Sala meant during the auction and in the subsequent Sale Order.

### a. Whether the Terms of the Sale Order and PSA Conflict

Before the auction, and in the presence of all the bidders, Judge Sala explained that the winning bidder's Deposit is non-refundable. He said if the winning bidder cannot close the sale, the Deposit will be forfeited. (Doc. 5-2 at 11–12). Standing alone, this statement could be interpreted as a general statement along the lines of the PSA's general statement that the Deposit is not refundable "under any circumstances." (*See* Doc. 5-1 at 84). However, that interpretation loses persuasive power when considering the Sale Order's plain statement that the "Winning Bidder's $250,000.00 deposit is non-refundable." (Doc. 5-1 at 66). Nowhere does the Sale Order mention the PSA or any means by which the Deposit could be refunded. In total, every statement by Judge Sala evinces an intent to make the Deposit non-refundable.

SJ Group argues this interpretation is unreasonable because, if true, Judge Sala would have removed the winning bidder's substantive rights and protections to which the parties had agreed. (Doc. 5 at 20). However, nothing in the record suggests Judge Sala was aware that such rights and protections even existed. So, it seems Judge Sala unwittingly could have and indeed did remove these rights and protections from the ultimate terms of the sale.

The Court believes this omission was an honest mistake. It was an honest mistake because it is perfectly reasonable for a bankruptcy judge to make a winning bidder's deposit non-refundable so to encourage finality of judicial sales. For many years, courts have supported the finality of judicial sales so to induce bidding and reliance thereon. *Pewabic Min. Co. v. Mason*, 145 U.S. 349, 356 (1892). To permit a winning bidder to renege upon its purchase after a judicial sale order "would interject an intolerable element of uncertainty and inequity into judicial sales. . . . It would give an advantage to those who blithely bid in ignorance at the expense of those who have made more careful inquiry into the reasonable value of the property offered for sale. Moreover, it could deprive the debtor

and lienholders of the benefit of an offer made by a more serious bidder." *In re Winston Inn & Rest. Corp.*, 120 B.R. 631, 637 (E.D.N.Y. 1990). Viewed in this light, it is clear Judge Sala ordered the Deposit be non-refundable so to discourage parties from subsequently renegotiating or reneging on their purchase. This leaves the Court to find that when Judge Sala said the winning bidder's deposit "goes hard," he meant it.

Now, the Court acknowledges a likelihood that Judge Sala erred by imposing terms on the sale to which the parties did not agree. *See In re F & N Acquisition Co.*, 42 F.3d 1399 (9th Cir. 1994). But if Judge Sala erred, SJ Group's opportunities to correct him have passed. SJ Group could have addressed such an error during the sale itself when Judge Sala asked if there were any questions about the terms he had discussed. But SJ Group remained silent. SJ Group also could have challenged the Sale Order within the time permitted by the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 8002(a)(1); *In re Delaney*, 29 F.3d 516, 518 (9th Cir. 1994) (noting that if the provisions of Rule 8002 are not followed, an appellate court has no jurisdiction over an appeal). But it did not seek reconsideration or an appeal of the, now final, Sale Order.

Those decisions cannot be challenged, and SJ Group acknowledges that it is not attempting to appeal Judge Sala's decisions and fervently argues this appeal is not a collateral challenge to them. (Doc. 13 at 12). Instead, SJ Group argues that the issue before the Court is *Judge Collins' interpretation* of Judge Sala's decisions. But the Court can find no error in Judge Collins' interpretation.

**b. Whether the Sale Order Overrides the PSA**

If Judge Collins' interpretation was not in error, then, SJ Group argues, it was error to find that the Sale Order's terms override the terms to which the parties specifically agreed. At first blush, it would seem only natural that the terms of a purchase and sale agreement between parties should be the controlling terms of an ordinary sale. But the particular sale here, the judicial sale of a multi-million-dollar property, is not an ordinary sale.

As noted before, Judicial sales require transparency and finality such that when

something is sold at auction by a bankruptcy court, the specific terms of the sale order must be the terms that ultimately control in order to provide stability and certainty to all parties. *See Mason*, 145 U.S. at 356; *In re Maxko Petroleum, LLC*, 425 B.R. 852, 875 (Bankr. S.D. Fla. 2010) (holding that when an inconsistency arises, the bankruptcy sale order ultimately "defines the terms and conditions of sale"). Permitting parties to sidestep the terms of a judicial sale order through a private, maybe secret, agreement would open the door to an "an intolerable element of uncertainty and inequity" because parties would no longer be able to rely on the court for a concrete statement of the deal. *See In re Winston Inn & Rest. Corp.*, 120 B.R. at 637; *see also In re Chateaugay Corp.*, 186 B.R. 561, 594 (Bankr. S.D.N.Y. 1995), *order aff'd, appeal dismissed*, 198 B.R. 848 (S.D.N.Y. 1996), *aff'd*, 108 F.3d 1369 (2d Cir. 1997) ("Thus, the successful bidder at a bankruptcy sale is bound by the offer as stated and as embodied in an approval order."); *In re Silver Bros. Co., Inc.*, 179 B.R. 986, 1007 (Bankr. D.N.H. 1995) ("If there is any ambiguity in the stated terms of sale the bidder has the obligation to bring that matter up for clarification before the call of the sale or the bidder will otherwise be strictly bound to the terms of the sale as called."). For this reason, a court's sale order, not the parties' private agreement, must have the final say on the terms governing a judicial sale.

Putting these considerations to the side, SJ Group also argues the Sale Order here does not govern the specific terms of the sale because it merely authorizes the sale. (Doc. 5 at 20). Although the Sale Order does authorize the sale, it does not say the winning bidder may proceed with the sale. Its language is more forceful. It states the winning bidder "shall" pay the full purchase price for the Motel and that the Sale Order is "enforceable in law and equity, including the remedy of specific performance." (Doc. 5-1 at 59). Instead of just authorizing a sale, the Sale Order requires it.[3] Therefore, the Court cannot accept SJ Group's argument that the Sale Order only authorizes the sale.

---

[3] SJ Group cites *In re Allegiance Telecom, Inc.*, 356 B.R. 93, 103 (Bankr. S.D.N.Y. 2006), for the proposition that agreements among parties supersede sale orders. (Doc. 5 at 20). In that case, the sale order had explicitly incorporated the terms of the parties' purchase agreement. *Allegiance* 356, B.R. at 102. It is, therefore, inapplicable to the situation here where the Sale Order does not incorporate the PSA.

The Court finds, the Sale Order's terms necessarily override the PSA's terms, and Judge Collins did not err by finding so. It follows that Judge Collins did not err in finding that SJ Group was not entitled to the return of the Deposit under the Sale Order.

### c. Whether Judge Collins Erred by Acting *Sua Sponte*

Finally, SJ Group argues that Judge Collins erred in finding the Sale Order contradicts and overrides the PSA, *sua sponte*, because he was not permitted to do so. (Doc. 5 at 21). Specifically, SJ Group argues that Judge Collins violated his own Order Limiting Issues by considering whether Judge Sala's Order contradicted and preempted the PSA. (Doc. 5 at 21).

The Order Limiting Issues limited discussion to "the issues raised in SJ Group's Motion for Summary Judgement." (Doc. 5-1 at 179). The Order does not require the Bankruptcy Court to accept SJ Group's assumption that the PSA governed the terms of the sale. Underlying the issue of whether the PSA permits the Deposit's return is the question of whether the Sale Order does too, and whether it or the PSA controls the Deposit's disposition. Judge Collins, therefore, did not err by questioning the implicit argument in SJ Group's Motion that the Sale Order does not contradict or override the PSA.

## IV. Conclusion

The Court concludes by addressing SJ Groups' argument that if the Court were to affirm Judge Collins' decision, it could encourage fraud by permitting a party to enter into contracts it knows will be contrary to and overridden by a subsequent court order. (Doc. 5 at 22). To be clear, SJ Group does not actually claim Haley committed fraud, and nothing in the record suggests Haley did. Even in the abstract, the Court does not see its decision here as one that encourages fraud.

SJ Group's hypothetical assumes a signing party will not know to object to the terms of the sale or a subsequent sale order that differ from the sale agreement. Judge Collins noted that during the auction, SJ Group was not represented by counsel. (Doc. 5-2 at 55). The rude truth is that a party choosing to proceed *pro se* in the judicial sale of a multi-million-dollar property accepts some legal risk that could be mitigated by counsel. Here,

the risk materialized.  That SJ Group failed to note a discrepancy between the Sale Order and the PSA strikes the Court not as fraud but, instead, a costly mistake.

Accordingly,

**IT IS HEREBY ORDERED** that the Final Judgment Regarding Disposition of Earnest Money Deposit is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 25th day of January, 2022.

Honorable Diane J. Humetewa
United States District Judge